UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TITUS C. WILLIS,

        Petitioner,

                                  CASE NO. 05-CV-74885-DT

   v.                             JUDGE NANCY G. EDMUNDS

                                    MAGISTRATE JUDGE PAUL J. KOMIVES

BLAINE LAFLER,

        Respondent.

_____/


## REPORT AND RECOMMENDATION


*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     D.   *Evidentiary Claims (Claims I, II & VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.   *Police Opinion Testimony (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         3.   *Other Acts Testimony (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         4.   *Videotape Evidence (Claim VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     E.   *Jury Instruction Claims (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         2.   *Failure to Give Adverse Inference Instruction (Claim III.A)* . . . . . . . . . . . . . . . . . . . 17
         3.   *Firearm Instruction (Claim III.B)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         4.   *Reasonable Doubt Instruction (Claim III.C)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     F.   *Abridgement of Defense Counsel's Argument (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . 24
     G.   *Failure to Appoint Identification Expert (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
     H.   *Denial of Motion to Compel Transcript, Videotape, and Photos (Claim VII)* . . . . . . . . . . . . . 28
     I.    *Judicial Misconduct (Claim IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
         1.   *The Trial Judge's Comments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
         2.   *Bias* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         3.   *Judicial Comments/Fair Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
     J.    *Limitation on Cross-Examination (Claim X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
     K.   *Prosecutorial Misconduct Claims (Claims XIII & XIV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
         1.   *Failure to List Res Gestae Witnesses (Claim XIII)* . . . . . . . . . . . . . . . . . . . . . . . . . 39

      2.     *Presentation of Perjured Testimony (Claim XIV)* ........................... 40
L.    *Counsel Claims (Claims VI, VII.C, XI, XII & XV)* .................................. 43
      1.     *Clearly Established Law* .................................................. 44
      2.     *Applicability of Presumed Prejudice Standard (Claim XII)* ..................... 45
      3.     *Denial of Continuance or Substitute Counsel (Claim XI)* ...................... 48
         a. Clearly Established Law ............................................... 49
         b. Failure to Appoint Substitute Counsel ................................. 51
         c. Failure to Grant Continuance ......................................... 53
      4.     *Trial Counsel (Claim XV)* ............................................... 55
         a. Waiver of Trial on Felon in Possession Charge .......................... 55
         b. Res Gestae Witnesses, Trial Judge's Conduct, and Harrison's Testimony ....... 56
         c. Video Equipment .................................................... 57
      5.     *Appellate Counsel (Claims VI & VII.C)* ................................... 58
M.   *Evidentiary Hearing* ........................................................ 61
N.   *Conclusion* ................................................................. 63
III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> ..................................... 63

\*      \*      \*      \*      \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.     Petitioner Titus C. Willis is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.     On March 14, 2002, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529; possession of a firearm by a convicted felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On April 3, 2002, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to a term of 40-60 years' imprisonment on the armed robbery conviction, a concurrent term of 40-60 months' imprisonment on the felon-in-possession conviction, and a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I.    THE TRIAL COURT ALLOWED POLICE-OPINION TESTIMONY THAT DEFENDANT WAS THE PERPETRATOR DEPICTED IN THE STORE SURVEILLANCE VIDEO. THIS WAS HEARSAY, AND INVADED THE PROVINCE OF THE JURY, DENYING DEFENDANT'S RIGHTS UNDER THE SIXTH AMENDMENT, AND THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE.

II.    THE TRIAL COURT ERRED IN DENYING A MISTRIAL WHEN THE OFFICER IN CHARGE VOLUNTEERED TO THE JURY THAT A FINGERPRINT RECORD SHOWED DEFENDANT HAD BEEN INVOLVED IN A "SECOND ARMED ROBBERY."

III.    IMPROPER INSTRUCTIONS DENIED DEFENDANT'S RIGHTS TO A FAIR AND IMPARTIAL TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.

IV.    THE TRIAL COURT ERRONEOUSLY ABRIDGED DEFENSE COUNSEL'S ARGUMENT, DENYING DEFENDANT'S RIGHTS TO A FAIR AND IMPARTIAL TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.

V.    THE TRIAL COURT ERRED IN DENYING THIS INDIGENT DEFENDANT'S REQUEST FOR THE APPOINTMENT OF AN IDENTIFICATION EXPERT.

VI.    OVER OBJECTION, THE SENTENCING COURT CONSIDERED A MURDER CONVICTION WHICH HAD BEEN VACATED, RELATING IN DETAIL THE SUPPOSED FACTS UNDERLYING THE PRIOR CONVICTION, WHICH WERE NOT IN THE RECORD, AND IN FACT WERE ERRONEOUS.  SENTENCING BASED ON FACTUALLY INACCURATE INFORMATION AND AN INVALID PRIOR CONVICTION DENIED DUE PROCESS, AND REQUIRES RESENTENCING BEFORE A DIFFERENT JUDGE.

Petitioner also filed a *pro se* supplemental brief raising eleven additional issues:

I.    DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AND AT A MINIMUM IS ENTITLED TO A REMAND FOR A <u>GINTHER</u> HEARING, WHERE APPELLATE

COUNSEL FAILED TO SECURE THE PRODUCTION OF THE WADE HEARING TRANSCRIPT, AND COPIES OF THE PHOTOGRAPHIC EXHIBITS AND THE SURVEILLANCE VIDEOTAPE, AND WHERE COUNSEL FAILED TO INCLUDED DEFENDANT'S <u>CRONIC</u>, <u>STRICKLAND</u>, AND <u>PEARSON</u> CLAIMS IN THE MOTION TO REMAND FILED BY APPELLATE COUNSEL.

II.     JUDGE TOWNSEND CLEARLY ERRED IN FAILING TO DECIDE DEFENDANT'S IN PRO PER MOTION TO COMPEL PRODUCTION OF TRANSCRIPT, EXHIBITS AND VIDEOTAPE, AND THUS DENIED DEFENDANT HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, EQUAL PROTECTION, THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AND A FULL AND ADEQUATE APPELLATE REVIEW.

III.    THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED DEFENDANT HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE COURT RULED THAT THE SURVEILLANCE VIDEOTAPE WAS IRRELEVANT, WHERE IT CONSTITUTED THE MOST IMPORTANT PIECE OF EVIDENCE IN THIS TRIAL. IT WAS FUNDAMENTALLY UNFAIR TO ADMIT SELECTED PHOTOGRAPHS FROM THE VIDEOTAPE AS AN EXCEPTION TO THE "BEST EVIDENCE RULE" AND THE "RULE OF COMPLETENESS."

IV.     DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, A FAIR TRIAL, AND AN IMPARTIAL JURY, BY THE TRIAL JUDGE'S JUDICIAL MISCONDUCT THROUGHOUT THE PROCEEDINGS IN THE TRIAL COURT WHICH PIERCED THE VEIL OF IMPARTIALITY AND UNDERMINED THE DEFENSE.

V.      THE TRIAL COURT VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND CONFRONTATION BY IMPROPERLY LIMITING DEFENSE COUNSEL'S CROSS-EXAMINATION OF THE COMPLAINANT AND BY IMPROPERLY LIMITING IMPEACHMENT OF THE COMPLAINANT WITH PRIOR INCONSISTENT STATEMENTS.

VI.     DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO COUNSEL AND THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S REQUEST FOR A NEW ATTORNEY AND FOR A CONTINUANCE.

VII.    PURSUANT TO <u>UNITED STATES V. CRONIC</u> AND <u>MITCHELL V. MASON</u>, THE TRIAL COURT VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHT TO COUNSEL BY FAILING TO APPOINT NEW COUNSEL OR GRANT A CONTINUANCE WHEN IT WAS INFORMED THAT COUNSEL HAD INTERVIEWED DEFENDANT FOR 15 MINUTES ON THE FRIDAY BEFORE THE START OF THIS ARMED ROBBERY TRIAL.

VIII.   DEFENDANT WAS DENIED A FAIR TRIAL WHERE THE PROSECUTOR FAILED TO LIST ALL KNOWN RES GESTAE WITNESSES ON THE INFORMATION LIST.

IX.     DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS WHERE THE PROSECUTOR KNOWINGLY PRESENTED FALSE TESTIMONY.

X.      DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

XI.     DEFENDANT IS ENTITLED TO CREDIT AGAINST HIS NEW MINIMUM SENTENCE FOR THE ALMOST NINE MONTHS SERVED IN JAIL PRIOR TO HIS SENTENCE FOR A CRIME COMMITTED WHILE ON PAROLE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Willis*, No. 242382, 2004 WL 136407 (Mich. Ct. App. Jan. 27, 2004) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal in the Michigan Supreme Court, raising each of the claims raised in counsel's and his own briefs on appeal, except for the claim relating to inaccurate information at sentencing. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Willis*, 471 Mich. 884, 688 N.W.2d 507 (2004).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 27, 2005. As grounds for the writ of habeas corpus, he raises the claims raised in the Michigan Court of Appeals, except for the two claims relating to his sentence (alleging inaccurate

information at sentencing and denial of credit for time served).  Petitioner filed a memorandum in support of his application on June 27, 2006.

6.    Respondent filed his answer on July 6, 2006.  He contends that petitioner's claims are either without merit or not cognizable on habeas review.

7.    Petitioner filed a reply to respondent's answer on August 23, 2006.

B.    *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in the brief of petitioner's counsel in the Michigan Court of Appeals:

> Rodney Harrison was the cashier of the CVS Pharmacy in the early morning of May 31, 2001, working the midnight shift, from 10:00 p.m. to 6:00 a.m. (T, 56-57; 3/13/02). At about 5:00 a.m., a person identified as defendant came into the store to purchase a soft drink; he also asked to use the restroom. As a courtesy, he was allowed to use the employee restroom, being escorted there by store security officer Fred Hicks. (T, 57-58; 3/13/02). The person then left the store at the same time as security officer Hicks, whose shift was over. (T, 58-59; 3/13/02).
>
> About 90 seconds later, the person reentered the store, saying he forgot to purchase a pack of cigarettes. (T, 59; 3/13/02). The man pulled a gun, and ordered the cashier to give him the money in the cash register. (T, 60-61; 3/13/02). The cashier put the money in a white plastic bag. The man told him not to move, and walked out of the store with the money. (T, 62; 3/13/02). The amount was later determined to be $283.00. (T, 63; 3/13/02).
>
> After the perpetrator left, the cashier shouted to the manager that they had been robbed. (T, 62-63; 3/13/02).
>
> The Harper Woods police arrived to take statements and start looking at the store surveillance videotape. (T, 63-64; 3/13/02). There were eight or nine cameras in the store, each focused on a different point such as the front door or cash register #1 (the cash register where the robbery occurred), with one tape recording for all the cameras, on a rotating basis. (T, 64-65; 3/13/02). However, the camera on cash register #1 did not completely show a picture of the area at that cash register. (T, 65; 3/13/02).
>
> About a week later, on June 8, 2001, Harper Woods Police Detective Hunter contacted Mr. Harrison to come in for a photo showup. (T, 66-67; 3/13/02). Detective Hunter told him "to look at several individuals who might or might not be a suspect in the armed robbery." (T, 67; 3/13/02). After thirty seconds, he picked out defendant Titus Willis. (T, 68; 3/13/02).
>
> Mr. Harrison identified video from the store, showing Mr. Willis exiting the

store with the money in a CVS plastic bag. (T, 70; 3/13/02). He picked out defendant's photo based on his face to face confrontation with defendant, in the well lit store, when he was robbed. (T, 71; 3/13/02).

The night of the robbery, the witness described the perpetrator as wearing a dark blue pullover shirt, blue jeans, and a baseball cap. He identified a photo showing defendant entering the store, wearing the same clothes. (T, 72; 3/13/02). The cashier claimed that the perpetrator had a gun, and forced him to take money from the register. However, he admitted on cross-examination that the video did not show anybody with a gun, and did not show the cashier taking money out of the register. (T, 73-74; 3/13/02).

The witness admitted that his statement to the police indicated that the robbery occurred between 2:00 a.m. and 3:00 a.m. (T, 76; 3/13/02). The person who confronted him was smaller, and shorter than the cashier, who was 5'11". The cashier testified the man was two or three inches shorter than he was, about 5'8" or 5'9". (T, 77; 3/13/02).

The cashier stated he was looking at the gun, not the individual's face. (T, 78; 3/13/02). The cashier admitted that the perpetrator was "significantly smaller" than he was. The cashier claimed he could not remember the weight he told the police, "not offhand." When confronted with his statement, he admitted he had told the police that the perpetrator weighed 180 pounds. Then he added, "That was a guess." (T, 78-79; 3/13/02). The cashier weighed 270 pounds. (T, 81; 3/13/02).

The witness admitted describing the perpetrator as a very light-skinned person, "a light-skinned Afro-American male." (T, 80; 3/13/02). The witness claimed he had told the police that the robber had a moustache, but this was not in his police statement. (T, 81; 3/13/02). There were about seven people in the store at the time of the robbery. He claimed that because the robber spoke in a low tone, no one else could have heard him. (T, 84-85; 3/13/02). The robber had a nine-millimeter handgun, silver with a black handle. (T, 88; 3/13/02).

Fred Hicks was working security for CVS on the 10:00 p.m. to 5:00 a.m. shift. (T, 90; 3/13/02). He identified defendant as the person who came into the store just before 5:00 a.m., whom Hicks escorted to the bathroom. Then Hicks saw defendant leave the store. (T, 90-9 1; 3/13/02). Hicks went outside and saw defendant getting into a white car and driving off. Then Hicks signed out and left the store, at about 5:00 a.m. (T, 92; 3/13/02). Hicks never looked at the surveillance tapes. (T, 98; 3/13/02).

Harper Woods Police Officer Steven Beicher arrived at the CVS Pharmacy at about 5:15 a.m. He took a report from Rodney Harrison about the robbery. Harrison told him about the surveillance tape, which Officer Belcher then secured and took to the police station. (T, 100-101; 3/13/02). The drugstore had equipment to review the videotape, but it was quite difficult to view. (T, 104; 3/13/02).

Detective Sergeant Robert Hunter was assigned to the robbery case and began working on it on June 5, 2001, about five days after the robbery. He was also an evidence technician, but he did not get called to process the scene for prints, because it was no longer secure. (T, 105-106; 3/13/02).

The first thing he did was to view the videotape. (T, 107; 3/13/02). The tape was time-lapsed among different cameras, showing about a half-second movement on each camera, then switching to a different camera. The police department had a special machine that allowed him to view each frame. (T, 107; 3/13/02).

Sgt. Hunter testified that he saw someone in the courtroom whom he had seen on the tape. The defense objected on the grounds of hearsay, and that this invaded the province of the jury, which was capable of making that determination of identification. The trial court overruled the objection. Over further defense objections, Sgt. Hunter identified defendant Titus Willis as the person he saw on the videotape, entering the store twice. (T, 108-109; 3/13/02). The sergeant identified People's Exhibits 4, 5, and 6 as photographs, true and accurate depictions of defendant, the second time he entered the store. He testified that on the tape, he saw defendant approach one of the registers, but then he was no longer in view of the camera. (T, 110; 3/13/02). He stated that Exhibit 7 showed Rodney Harrison approaching Mr. Willis, at the register. (T, 111; 3/13/02). He stated that Exhibits 8 and 9 showed Mr. Willis approaching the exit door, carrying a white bag. (T, 112; 3/13/02).

Defendant objected to the introduction of the photographs, proposed Exhibits 4 through 9, citing the best evidence rule and the rule of completeness. The trial court overruled, and admitted the exhibits. (T, 112-113; 3/13/02).

Sgt. Hunter issued an area broadcast to other police departments, with a physical description of the subject and a description of the incident. Based on a reply, he ran license plate number TCD 258, a white 1993 Buick Riviera registered to defendant Titus Willis. He also obtained a photograph of Mr. Willis from the Secretary of State. (T, 113-114; 3/13/02). In his opinion, this photograph and the CVS photographs "were a match." The defense objected that this invaded the province of the jury. The trial court permitted the prosecutor to continue. (T, 114; 3/13/02).

Mr. Harrison gave Sgt. Hunter a description including a distinctive short, thin moustache. (T, 114-115; 3/13/02). Sgt. Hunter prepared a photo showup, not using the Secretary of State photo because defendant was smiling, and it was very difficult to find five additional subjects from our database that were smiling, and it would have been unfair to Mr. Willis. I then obtained a photograph from a previous contact in Oakland County. (T, 115; 3/13/02).

He obtained a written statement from Harrison, then advised him that the person may or may not be in the photos. Harrison immediately identified number five, Titus Willis, saying "That's him right there, I'll never forget his face." Sgt. Hunter took a Polaroid of the photo array. (T, 116-117; 3/13/02).

Sgt. Hunter admitted that in viewing the store videotapes, he never saw Rodney Harrison take money from the register, have money in his hand, or hand money to anyone. Nor did he see anybody on the tape with a gun. (T, 12 1-122; 3/13/02). He admitted that in the nine months since he had viewed the surveillance tape, he did not make any effort to secure facilities for showing that tape to the jury. (T, 123; 3/13/02). Sgt. Hunter admitted that he selected the photographs from the

videotape, and the prosecutor made the decision what photographs to present to the jury. (T, 123-124; 3/13/02).

Sgt. Hunter acknowledged that no gun was ever recovered. (T, 128; 3/13/02). Then the following exchange took place:

[DEFENSE COUNSEL]: You were gracious enough to give me a fingerprint report that showed that there was nothing ever recovered that linked the defendant to anything; isn't that true?

A. This is for a second armed robbery. If you would like me to discuss that with you, I will. (T, 128-129; 3/13/02).

The trial court denied defendant's motion for a mistrial, based on this gratuitous remark about a "second armed robbery." (T, 131-132; 3/13/02).

The parties stipulated that defendant had a prior felony conviction. (T, 5; 3/14/02). The People rested; then the defense rested. (T, 6; 3/14/02).

The jury convicted defendant of robbery armed, felony firearm, and felon in possession of a firearm. (T, 50-53; 3/14/02).

Def.-Appellant's Br. on Appeal, in *People v. Willis*, No. 242382 (Mich. Ct. App.), at 1-7.


C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Evidentiary Claims (Claims I, II & VIII)*

Petitioner first raises several evidentiary claims. In Claim I, he argues that the trial court erred in admitting opinion testimony that he was the person shown in the videotape. In Claim II, petitioner argues that he was denied a fair trial by Sgt. Hunter's testimony concerning a second robbery petitioner had committed. Finally, in Claim VIII, petitioner argues that he was denied a fair trial when the court permitted the prosecutor to introduce photographs taken from the videotape, rather than the tape itself. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness,

an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings."  *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.    *Police Opinion Testimony (Claim I)*

Petitioner first contends he was denied a fair trial by police opinion testimony identifying

him as the person in the videotape from the store.  At trial, Sgt. Hunter testified that he had viewed the videotape from the store using a special machine, and that the person in the videotape entering the store twice, approaching the cash register, and exiting with a white bag was petitioner.  Sgt. Hunter also testified that the person on the videotape matched pictures of petitioner obtained from the Secretary of State and his police department.  Petitioner objected on the grounds that this testimony was hearsay and invaded the province of the jury, but the court overruled the objection. *See* Trial Tr., Vol. I, at 107-114.  The Michigan Court of Appeals rejected petitioner's claim, concluding that the testimony was not hearsay because it reflected Sgt. Hunter's observations rather than his comments to other persons, and that the opinion testimony was admissible as lay opinion under Rule 701.  *See Willis*, 2004 WL 136407, at *1-*2, slip op. at 1-2.  In his habeas application, petitioner does not renew his hearsay argument, instead focusing on Hunter's invasion of the jury's role.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

In rejecting petitioner's claim that Sgt. Hunter's testimony invaded the province of the jury, the Michigan Court of Appeals reasoned:

> The jury had sufficient opportunity to observe defendant's appearance in the courtroom and compare him to the photographs taken from the videos.  This process did not involve any skill or experience that elevates a police officer above civilian citizens.  Accordingly, there is no apparent reason why the jury would abdicate its own fact-finding responsibility and simply defer to Hunter's determination of the robber's identity.
>
> Moreover, Hunter's testimony did not involve a judgment of defendant's guilt or innocence, or an opinion of how the jury should interpret the evidence.  At most, the photographs established that defendant was present in the store.  The prosecution never contended that the photographs established anything more.  Hunter admitted that he had no personal knowledge whether a robbery was actually committed.  To convict defendant, the jury would have to believe Harrison's testimony that defendant robbed him.  Consequently, Hunter's testimony did not impinge on the jury's primary inquiry.

*Id*. at *1-*2, slip op. at 2.  The Court should conclude that this determination was reasonable.

First, there is generally no prohibition on a witness offering opinion testimony which goes to an ultimate issue in the case. Both the Michigan and Federal Rules of Evidence permit such testimony, *see* FED. R. EVID. 704(a); MICH. R. EVID. 704, and under Rule 704 the courts routinely permit a witness to offer opinion testimony that identifies a person in a photograph. *See United States v. Langford*, 802 F.2d 1176, 1178 (9th Cir. 1986); *United States v. Jackson*, 688 F.2d 1121, 1125-26 (7th Cir. 1982); *United States v. Sellers*, 566 F.2d 884, 886 (4th Cir. 1977). At a minimum, there is no clearly established federal law as determined by the Supreme Court which suggests that the admission of such evidence violates the Constitution, *see Hopp v. Burt*, No. 03-10153, 2007 WL 162248, at *9 (E.D. Mich. Jan. 16, 2007) (Lawson, J.), as required for relief under § 2254(d)(1). Second, even if the Constitution did prohibit testimony on an ultimate issue, Sgt. Hunter's testimony did not go to such an issue. As the court of appeals correctly noted, the jury had the opportunity to view the evidence and decide for itself the identity issue, and the identity issue did not ultimately resolve the question of petitioner's guilt because the videotape did not show the robbery itself. Thus, "the jury was free to believe or disregard [Sgt. Hunter's] testimony; the issue of whether [petitioner] was the same person as the . . . robber was left to the jury for its ultimate determination." *Jackson*, 688 F.2d at 1126. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 3.     *Other Acts Testimony (Claim II)*

Petitioner next contends that he was denied a fair trial by Sgt. Hunter's testimony that he was involved in another robbery. During cross examination by defense counsel regarding the absence of a gun linking petitioner to the crime, counsel asked: "You were gracious enough to give me a fingerprint report that showed that there was nothing ever recovered that linked the defendant to

anything, isn't that true." Sgt. Hunter responded: "This is for a second armed robbery. If you would like me to discuss that with you, I will." Trial Tr., Vol. I, at 128-29. Petitioner moved for a mistrial, which was denied by the trial court. *See id*. at 130-31. The Michigan Court of Appeals rejected petitioner's claim, reasoning that Hunter's answer was not an unresponsive interjection of irrelevant matter, but rather was "a *responsive* answer to defense counsel's question. Defense counsel began to question Hunter about a fingerprint report, and Hunter replied that the report was for a different robbery." *Willis*, 2004 WL 136407, at *2, slip op. at 3. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

Second, as the court of appeals concluded, Sgt. Hunter's testimony was fairly responsive to the question posed by petitioner's counsel. Counsel asked about the absence of any findings in a fingerprint report, and Hunter correctly testified that the report to which counsel was referring was not related to the crime at issue in petitioner's trial. Further, Sgt. Hunter's testimony on this matter was a brief statement with no detail, and no one mentioned the issue again. In light of the

photographic and eyewitness testimony, this brief mention of a second robbery did not deprive petitioner of a fair trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      4.      *Videotape Evidence (Claim VIII)*

Petitioner also argues that the trial court erred in admitting still photographs taken from the surveillance tape, without requiring admission of the tape itself. Petitioner contends that the admission of just the photographs violated the best evidence rule, *see* MICH. R. EVID. 1001-1004, as well as the rule of completeness, *see* MICH. R. EVID. 106. The Michigan Court of Appeals rejected these claims, concluding that the photographs were admissible as either originals or duplicates under the best evidence rule, and that there was no violation of the rule of completeness. *See Willis*, 2004 WL 136407, at *8-*9, slip op. at 9. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As the court of appeals explained, "[t]hroughout the trial, prosecution witnesses readily admitted that the videotape did not show the gun or any transfer of money to defendant." *Id*. at *9, slip op. at 9. Because it was conceded by all that the videotape showed only petitioner's presence in the store and did not show the actual robbery, petitioner cannot show that he was prejudiced by the absence of the complete videotape. Petitioner's counsel reviewed the tape and apparently found no additional exculpatory evidence on the tape, and petitioner does not allege that the videotape would have revealed any exculpatory evidence. In these circumstances, the failure to show the entire videotape did not deprive petitioner of a fair trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Jury Instruction Claims (Claim III)*

Petitioner next raises several challenges to the trial court's jury instruction. Specifically, he contends that the court erred by failing to: (1) instruct the jury that it could draw an adverse inference from the prosecutor's failure to produce the videotape; (2) instruct on the definition of firearm; and (3) properly define reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.  *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.  *Failure to Give Adverse Inference Instruction (Claim III.A)*

Petitioner first contends that the trial court erred in failing to give an instruction that the jury

could draw an adverse inference from the prosecutor's failure to produce the entire videotape. The Michigan Court of Appeals rejected this claim, reasoning that the prosecution did not suppress the videotape, but provided it to defense counsel, and that the absence of the evidence was not prejudicial. Therefore, the court concluded, an adverse inference instruction was not warranted. *See Willis*, 2004 WL 136407, at *3, slip op. at 4. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As the court of appeals explained, the prosecution did not suppress the evidence or otherwise fail to produce it. Sgt. Hunter testified that he viewed the videotape twice with defense counsel, a claim not denied by counsel. The prosecution simply did not obtain video equipment which would allow the tape to be viewed.[1] However, petitioner did not request the prosecutor to obtain the necessary equipment, nor did he attempt to obtain the equipment himself. Because the evidence was equally available to, and could have been produced by, petitioner, he was not entitled to an adverse inference instruction. *See Willis*, 2004 WL 136407, at *3, slip op. at 4 (discussing *People v. Davis*, 199 Mich. App. 502, 503 N.W.2d 457 (1993)); *cf. United States v. Hendrix*, 482 F.3d 962, 968 (7th Cir. 2007); *United States v. West*, 393 F.3d 1302, 1309-10 (D.C. Cir. 2005). Further, petitioner was not entitled to an adverse inference instruction because the inference to be drawn–that the videotape did not show him robbing the store–was admitted by the prosecution witnesses, and thus the inference would have been cumulative to the evidence presented. *See Beverly v. Walker*, 899 F. Supp. 900, 913-14 (N.D.N.Y. 1995), *aff'd*, 118 F.3d 900 (2d Cir. 1997). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

---

[1]Apparently, because the tape recorded snapshots from eight separate cameras, special equipment was required to view the tape.

3.    *Firearm Instruction (Claim III.B)*

Petitioner next argues that he was denied a fair trial by the court's failure to instruct the jury on the definition of firearm in connection with the felon-in-possession charge. Initially, the trial court instructed the jury that, with respect to armed robbery, petitioner did not have to be armed with an actual weapon:

> However, to have armed robbery, a person doesn't have to be armed with a dangerous weapon. But to go farther, it says, or any article that's used and fashioned in such a way as to leave the person so assaulted to reasonably believe it to be a dangerous weapon.
>
> And an example would be if a person came up from behind you and put a hard object in your back and indicated that he wanted your property.
>
> You don't have to turn around and look to see what it is if the person indicates to you that he's armed and he's going to do something to you.
>
> If it turns out later that it was a stick of wood or a Pepsi Cola bottle or anything that would make you think it was a weapon, then as far as the Statute is concerned, that is a weapon.

Trial Tr., Vol. II, at 39-40. With respect to the felon-in-possession charge, the court simply instructed: "If you find that the defendant has been convicted of a felony and if he was in possession of a firearm, that is possession of a firearm by a felon." *Id.* at 40-41. The jury, and the trial judge, later exhibited some confusion on this matter, but the confusion was ultimately cleared up. In response to a note from the jury, the following exchange occurred:

> THE COURT: Okay, your question is: "Explain Count 2, Possession of a Firearm by a Felon."
>
> Is that right? Okay.
>
> If a person has been convicted of a felony that means that a person is a felon. Okay. If that person who's been convicted of a felony is in possession of a firearm, that is possession of a firearm by a felon.
>
> Does that explain it?
>
> JUROR ELEVEN: Well, that's not really the question.
>
> THE COURT: Okay, I'll read it. "Please give clarification of Count 2, explain guilty of Possession of a Firearm by a Felon."

JUROR ELEVEN: Actually, that's part of the question.

THE COURT: Okay.

JUROR ELEVEN: There's another part.

THE COURT: Okay. "If found guilty of robbery armed, does it matter if it was an actual gun?"

Remember when I explained to you, that if a person – if the person who perpetrates a robbery is armed with a weapon – and it is alleged that this was a gun – or an article that's used and fashioned in such a way to lead the victim to believe it to be a dangerous weapon, that's armed robbery.

Again, my example was, if somebody comes up and pokes something in your ribs and leads you to believe that that person is armed, you don't have to prove that it's a weapon. If it turns out later that it wasn't, as far as the law is concerned that's being armed.

Okay. Is that the second part of you question? I thought these were two separate questions.

JUROR ELEVEN: No. We need that for the second count.

Now, really, basically what the question boils down to is, if he didn't have an actual gun, it was something that looked like a gun, does that rule still apply?

THE COURT: That's exactly what I said. Right.

JUROR ELEVEN: Well, that's for the second count.

JUROR FIVE: In the eyes of the law, firearm.

JUROR ELEVEN: The possession of a firearm.

JUROR SIX: It says firearm.

JUROR ELEVEN: See, what if it's not a firearm?

THE COURT: I'm going to read it exactly to the record.

JUROR ELEVEN: Okay.

THE COURT: "If found guilty of robbery armed, does it matter if it was an actual gun?"

No, it doesn't make any difference.

JUROR ELEVEN: Okay. Okay.

THE COURT: Because, again, I read the Statute to you.  It says an actual, either a weapon or an article that's used in such a way to lead the person to believe it to be a weapon.  That is armed robbery.  Okay.

And the other question is, as I said, Felon in Possession of a Firearm.  If the person is a felon and he has a firearm, that is Possession of a Firearm by a Felon.

Does that –

JUROR: No.

MR. DAWSON: I think, based on listening to the question, I think what the juror wants to know is, in Count 1 we have either an article – either an actual weapon or an article used, and I think they've got that one.

*In Count 2, the firearm has to be a firearm.*

THE COURT: *That would be possession –*

* * * *

JUROR SIX:  *I guess our question, your Honor, is, if, be it a stick or a pop bottle, in the eyes of the law, is that considered a firearm?*

THE COURT: *No.*

JUROR SIX: Okay.

THE COURT: But you don't need a firearm to commit an armed robbery, as I stated.

JUROR SIX: Right.

THE COURT: *But as far as Felon in Possession of a Firearm, you have to find, first of all, that the defendant was a felon; and two, that he was in possession of a firearm.*

JUROR: Okay.

Trial Tr., Vol. II, at 45-49 (emphasis added).

It is true that the court's instructions regarding the felon-in-possession charge were not a model of clarity.  However, the highlighted portions of the above exchange make it clear that the court adequately instructed the jury that petitioner could be convicted on the felon-in-possession charge only if he possessed an actual firearm.  The court repeatedly used the term "firearm," as

opposed to the examples of actual or simulated weapons which would suffice for armed robbery. And the court explicitly stated that a simulated weapon does not constitute a firearm. Although the instructions could have been clearer or more simply put, the instructions as clarified by the court adequately informed the jury that it could convict petitioner of being a felon in possession only if it found that petitioner possessed an actual firearm. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

4.     *Reasonable Doubt Instruction (Claim III.C)*

Petitioner also argues that he was denied a fair trial by the trial court's reasonable doubt instruction. With respect to reasonable doubt, the court instructed:

> The law is proof beyond a reasonable doubt. And a reasonable doubt is a doubt for which you can assign a reason for having it. It is not a flimsy, vain, fictitious, emotional or capricious doubt. It is not a hunch, it's not a feeling, it is not a possibility of innocence, but it's a fair, honest and reasonable doubt that can grow out of the evidence in the case. If you can say that you have an abiding conviction to a moral certainty that the People have met their burden, it is your duty to bring back a verdict of guilty.

Trial Tr., Vol. II, at 30. Petitioner argues that this definition of reasonable doubt is defective in two ways. First, he argues, the instruction failed to state that a reasonable doubt can arise from the lack of evidence as well as from the evidence presented. Second, petitioner argues, the instruction erred in describing a reasonable doubt as one for which the jurors could assign a reason. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As the Supreme Court has explained, "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). Rather, the only question is whether, "'taken as a whole, the instructions . . . correctly convey the concept of reasonable doubt to the jury.'" *Id*. (quoting *Holland*

*v. United States*, 348 U.S. 121, 140 (1954)). Here, the instructions did so. Contrary to petitioner's argument, there was no error in the court's definition of reasonable doubt as a doubt based on reason. Although the definition was circular and of little help, it did not misstate the definition of "reasonable doubt," nor did it shift the burden of proof to defendant. *Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir. 1985) ("An instruction that a reasonable doubt is 'a doubt for which a reason can be given' merely conveys what is already axiomatic from the plain meaning of those very words. . . . While such a definition does nothing to advance the jury's understanding of reasonable doubt, it in no way undermines or destroys their common sense appreciation of that term's meaning."), *vacated on other grounds*, 475 U.S. 1138 (1986); *cf. United States v. Romero*, 32 F.3d 641, 651-52 (1st Cir. 1994). Likewise, the instruction was not inadequate for failing to advise the jury that a reasonable doubt can arise from the lack of evidence as well as from the evidence presented. "[T]here is no requirement, at least as a matter of federal law, that the jury be instructed that reasonable doubt can be based on a lack of evidence." *Thompson v. Kelchner*, 46 Fed. Appx. 75, 82 (3d Cir. 2002); *see also*, *United States v. Diaz*, 176 F.3d 52, 101 (2d Cir. 1999); *United States v. Kime*, 99 F.3d 870, 877 (8th Cir. 1996).

In short, the court's instructions as a whole made clear that the prosecution bore the burden of proof, that petitioner had no obligation to present any evidence, and that the prosecution's burden was to establish each element of the offenses charged beyond a reasonable doubt. As the Court explained in *Victor*:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the

instructions must correctly convey the concept of reasonable doubt to the jury.

*Victor*, 511 U.S. at 5 (citations omitted) (internal quotation omitted). Here, the trial court's definition adequately conveyed to the jury that it could convict only if the prosecution had proved petitioner guilty beyond a reasonable doubt. The court's instruction also made it clear that the jury's decision had to be based on a careful examination of the evidence in the case. The instruction did not lower the government's burden of proof, nor suggest to a reasonable jury that petitioner could be convicted based on a lower burden of proof, and there is not a "reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [reasonable doubt] standard." *Victor*, 511 U.S. at 6. Accordingly, the Court should conclude that petitioner is not entitled to the writ of habeas corpus on this ground.

F.      *Abridgement of Defense Counsel's Argument (Claim IV)*

In his fourth claim, petitioner contends that the trial court improperly abridged counsel's closing argument. Part of petitioner's defense was that the victim, Harrison, had misidentified petitioner as the robber. As explained after closing argument had been delivered, counsel sought to direct the jury's attention to recent cases showing that identification evidence is unreliable. *See* Trial Tr., Vol. II, at 44-45. During the closing argument, however, the trial court precluded this line of argument:

> MR. SUROWIEC: Eyewitnesses frequently play a vital role in uncovering the truth about a crime. The evidence that they provide is critical in identifying, charging and ultimately convicting suspected criminals. That's why it's absolutely essential that eyewitness evidence be accurate and reliable.
> You have read in the last year or so –
>
> THE COURT: You can't use that Mr. Surowiec. You have to focus on this case. Bringing in things like that is inflammatory and it's not argument, so forget about it.
>
> MR. SUROWIEC: Your Honor, I want to bring out –

24

THE COURT: You can't do it. I know what you want to do. You can't argue to the jury about what happened in things that have been uncovered here lately. You can't do that. You can argue the evidence in the case, but you can't appeal to the jury's sympathy.

MR. SUROWIEC: I'm not attempting to appeal to their sympathy.

THE COURT: I think you understand what I'm trying to tell you, so you know you should avoid it. So go right on and continue your argument. You and I know what I'm telling you.

MR. SUROWIEC: May I approach the bench?

THE COURT: No.

MR. SUROWIEC: Please.

THE COURT: Would you please continue Mr. Surowiec, this is not necessary. You may argue the evidence or lack of it, but you cannot argue something that happened someplace else 10 years ago, or something that may have happened in other cases.

MR. SUROWIEC: I'm not talking about –

THE COURT: Continue, please.

MR. SUROWIEC: I simply want to show, or argue that recent evidence has shown that eyewitness identification is not reliable. It is not reliable.

    * * * *

THE COURT: You can argue what you want to about the identification, or lack of it, or whatever it was, in this case. That's all you can argue. And that's exactly what I tried to tell you not to do. You can argue this case.

Trial Tr., Vol. II, at 14-16. The Michigan Court of Appeals rejected petitioner's claim, reasoning that the trial judge did not abuse his discretion in preventing counsel from arguing facts not in evidence. *See Willis*, 2004 WL 136407, at *5, slip op. at 6. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A trial court has broad discretion in controlling the scope of closing argument. *See Herring*

*v. New York*, 422 U.S. 853, 862 (1975). Specifically, a trial court does not error in limiting closing argument to matters raised by the evidence in the case. *See id.*; *Richardson v. Bowersox*, 188 F.3d 973, 980 (8th Cir. 1999). Here, counsel sought to argue matters not in evidence, *i.e.*, instances of misidentification in other cases. Because this evidence was not presented at trial, the court did not err in limiting counsel's closing argument. *See Richardson*, 188 F.3d at 980. Further, petitioner cannot establish any prejudice. Counsel's misidentification argument could have weakened Harrison's testimony if Harrison's identification alone supported petitioner's guilt, but the jury also had before it the surveillance photographs which allowed it to decide for itself the identity issue. Petitioner thus cannot show that he was prejudiced by the trial court's limitation on counsel's closing argument. *Cf. Burdis v. Withrow*, No. 00-10268, 2002 WL 31748914, at *6 (E.D. Mich. Nov. 19, 2002) (Lawson, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Failure to Appoint Identification Expert (Claim V)*

Petitioner also argues that he was denied due process by the trial court's failure to appoint an expert on eyewitness identification. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner has identified no clearly established federal law as determined by the Supreme Court which entitles him to any independent experts as necessary to obtain relief under § 2254(d)(1). The only case arguably on point is *Ake v. Oklahoma*, 470 U.S. 77 (1985). The Supreme Court's holding in *Ake*, however, was limited:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and

presentation of the defense.

*Id*. at 83.  The Court did not discuss a defendant's entitlement to other court appointed experts outside the context of an insanity defense.  And, subsequent to *Ake*, the Supreme Court has explicitly declined to answer this question.  *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985).

In light of the language of *Ake* and the Court's reservation in *Caldwell*, there is disagreement over whether *Ake* requires the provision of expert services beyond psychiatric services necessary to present an insanity defense.  *Compare, e.g.*, *Terry v. Rees*, 985 F.2d 283, 284 (6th Cir. 1993) (petitioner denied an opportunity to present an effective defense by failure to appoint independent pathologist), *with Baxter v. Thomas*, 45 F.3d 1501, 1511 n.24 (11th Cir. 1995) *and Moore v. Kemp*, 809 F.2d 702, 736-37 (11th Cir. 1987) (en banc) (Hill, J., concurring in part and dissenting in part) (declining to extend *Ake* to non-psychiatric experts).

Under the AEDPA, however, the question is not whether this Court, or the Sixth Circuit, would extend *Ake* to require the provision of non-psychiatric experts.  Rather, the question is whether *Ake* itself clearly establishes petitioner's right to the appointment of such experts.  In a number of pre-AEDPA cases, courts have held that extending *Ake* to non-psychiatric experts would amount to a "new rule" of constitutional law which could not be applied on collateral review under the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989).  *See Gray v. Thompson*, 58 F.3d 59, 66 (4th Cir. 1995), *vacated on other grounds*, 518 U.S. 152 (1996); *Jackson v. Ylst*, 921 F.2d 882, 885-86 (9th Cir. 1990).  The *Teague* rule is "the functional equivalent" of the clearly established law requirement of § 2254(d)(1), *see Williams*, 529 U.S. at 379 (opinion of Stevens, J.), and thus a rule which fails to satisfy *Teague* will also fail to satisfy § 2254(d)(1).  *See id*. at 380 (opinion of Stevens, J.); *id*. at 412 (opinion of O'Connor, J., for the Court).  *See generally*, *Williams*

*v. Cain*, 229 F.3d 468, 474-75 (5th Cir. 2000) (discussing relationship between *Teague* and §

2254(d)(1)). Thus, petitioner's asserted right to the appointment of non-psychiatric experts was not

clearly established law under § 2254(d)(1) at the time of his conviction. *See Brewer v. Cason*, No.

1:05-cv-118, 2006 WL 3103212, at *3 (W.D. Mich. Oct. 31, 2006); *Tanner v. Yukins*, No. 04-CV-

71155, 2005 WL 2994353, at *16 (E.D. Mich. Nov. 7, 2005) (Roberts, J.); *Weeks v. Angelone*, 4 F.

Supp. 2d 497, 521-22 (E.D. Va. 1998), *aff'd*, 176 F.3d 249, 264-65 (4th Cir. 1999), *aff'd on other*

*grounds*, 528 U.S. 225 (2000).

Further, even if *Ake* were applicable to non-psychiatric experts, the Michigan Court of

Appeals's decision is not an unreasonable application of *Ake*. The court of appeals explained that

petitioner was not entitled to an identification expert because the dangers of misidentification are

within the general knowledge of jurors, the issue was explored by counsel on cross-examination, and

the jurors could test the identification for themselves because they had the surveillance photographs.

*See Willis*, 2004 WL 136407, at *5, slip op. at 6. As the Court explained in *Ake*, a criminal

defendant is not entitled to whatever expert assistance he desires, but only to access to the "basic

tools of an adequate defense" so that he has "an adequate opportunity to present [his] claims fairly

within the adversary system." *Ake*, 470 U.S. at 77 (internal quotations omitted). In petitioner's case,

counsel's cross-examination and the surveillance photographs provided petitioner "ample

opportunity to show he was a victim of misidentification." *United States v. Rodriguez-Felix*, 450

F.3d 1117, 1128 (10th Cir. 2006); *see also*, *United States v. Brewer*, 783 F.2d 841, 843 (9th Cir.

1986). Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

H.      *Denial of Motion to Compel Transcript, Videotape, and Photos (Claim VII)*

Petitioner next argues that he was denied his rights to equal protection and access to the

courts by the trial court's failure to rule on his post-trial motion to compel copies of the transcript of a *Wade* hearing, the surveillance videotape, and photographs. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

There is no question that a "State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971). Likewise, there is no question that prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).

Nevertheless, petitioner here was represented by counsel, and there is no allegation that the transcript, videotape, and photographs were not available to appellate counsel. While counsel did not himself secure these materials, petitioner does not allege that the state prevented counsel from obtaining the materials. A court is not required to permit "hybrid" representation by a *pro se* defendant and counsel together. *See United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)); *United States v. Bova*, 350 F.3d 224, 226 (1st Cir. 2003); *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998). The state's provision of counsel to petitioner and counsel's ability to obtain the materials satisfied the state's obligation to afford petitioner equal protection of the laws and access to the courts. *See Bourdon v. Loughren*, 386 F.3d 88, 98-99 (2d Cir. 2004); *Sullivan v. Sokolski*, No. 91-2321, 1994 WL 105526, at *3 (E.D. Pa. Mar. 30, 1994); *United States ex rel. Richards v. Bartlett*, 830 F. Supp. 695, 700-01 (E.D.N.Y. 1993). This conclusion is not altered by petitioner's claim that counsel was

ineffective for failing to secure these materials. While such a claim may be an independent basis for relief (an issue discussed below), counsel's alleged ineffectiveness does not negate the fact of counsel's access to the materials, which is the only relevant inquiry with respect to petitioner's equal protection and access to courts claims. *See Bourdon*, 386 F.3d at 99. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Judicial Misconduct (Claim IX)*

Petitioner next claims that he was denied a fair trial by the trial judge's misconduct and partiality. It is not entirely clear from petitioner's brief whether he is claiming that the trial court's comments demonstrate impermissible bias, or merely that the judge's comments themselves denied him a fair trial. In either event, petitioner is not entitled to habeas relief.

1.      *The Trial Judge's Comments*

In support of his claim, petitioner points to a number of comments made by the trial judge during the course of the trial:

- During the cross-examination of Rodney Harrison, counsel attempted to approach the witness with a prior statement. The court admonished counsel not to approach the witness, saying "[w]ell, why don't you just ask him the question and stop running around. . . . Read what is there and ask him if he said that." Trial Tr., Vol. I, at 78-79.

- As counsel was impeaching Harrison with the prior statement, the court admonished counsel: "Don't ask him any questions. What the man said, Mr. Surowiec, you heard him. You're saying to the jury, and you're asking him what he told the police. Now, if it's own statement, it's there; if it isn't, it isn't there. He's telling these people today." *Id*. at 79-80. When counsel attempted to ask Harrison if he had told the police that the perpetrator had a moustache, the court interrupted: "May I infer, that since you're asking him to look over the statement, that it is not in the statement." *Id*. at 81.

- Harrison denied that his description of the perpetrator was based on the video and not on his own recollection, to which counsel responded: "But, of course, the video would be most accurate." The court interrupted, admonishing counsel that "you

can't ask the man that. You can't ask him that. You can only ask him what he said, or what he did, or what he did not do. You're asking him to draw a conclusion. You can't do that." *Id*. at 82-83.

- As counsel was questioning Harrison about how much time elapsed between the time petitioner left and re-entered the store, counsel asked: "So, what your saying, it was more than nine seconds but–" The prosecutor objected, arguing that Harrison's testimony was that it was ninety seconds. The court sustained the objection, noting that "the jury heard what he said." *Id*. at 83-84

- Attempting to show that the photo lineup which Harrison viewed was suggestive, counsel asked Harrison whether he was looking for a light-complected person. Harrison responded, "No, I was looking for a face." Counsel then stated, "You were looking for a light complected face," at which point the court interrupted, saying that "he's answered your question." Counsel again tried to ask the question, and the prosecutor objected arguing that the question had been asked and answered. The court sustained the objection, concluding that "it doesn't make any difference whether it's cross, the rule still applies. He's answered your question." *Id*. at 85-86.

- Counsel asked Harrison whether he knew that the perpetrator weighed 180 pounds. Harrison responded, "I was guessing." Counsel replied: "Sure. And you were guessing when you picked the photograph, too; weren't you?" The prosecutor objected that the question was argumentative, and the trial court sustained the objection, explaining: "You're arguing with the witness, Mr. Surowiec." *Id*. at 86.

- Counsel asked Harrison whether he testified at the preliminary examination that the cash registers were three feet tall. The court interrupted, admonishing counsel: "[I]f you're going to impeach him, you have to impeach him on a statement that he's made that is inconsistent to what he said in court. And so far no one has ever asked him that question, so there's nothing to impeach him about." *Id*. at 87.

- During cross-examination of Fred Hicks, counsel asked the witness whether he had ever testified before in a criminal trial. The prosecutor objected on the basis of relevance, and the court sustained the objection. In response to counsel's argument that the question should be allowed on cross-examination, the court said, "It doesn't make any difference, the Rules of Evidence are the same." *Id*. at 93-94.

- During counsel's cross-examination of Detective Hunter, the trial judge interposed his own objections on two occasions. *See id*. at 124-25.

- After Detective Hunter responded to counsel's question about the fingerprint card by stating that it was for a different robbery, the court excused the jury. On further questioning outside the presence of the jury, counsel asked Hunter whether his testimony was just "a gratuitous offer that you wanted to share with the jury?" The

court interjected: "Oh, that's nonsense. You asked him was there anything else that linked him with this particular case and he answered your question." Counsel moved for a mistrial, to which the judge responded: "Oh, absolute nonsense, poppycock. There's a time when you know to stop asking questions." *Id*. at 131.

- Outside the presence of the jury, the attorneys and the court discussed jury instructions. Counsel asked the court to give the model instructions rather than its own instruction. The judge rejected this request, stating: "I don't care what your problem is, I'm not going to read anything out of a book. I'm going to instruct the jury the same way I've been doing for 25 years. I'm going to instruct them, I'm going to tell them what the law is." Counsel responded that he had a hard time following the judge and needed the model instructions to insure that the court had complied with the law. The judge responded: "Why is it that you seem to invent things to annoy me?" Counsel replied: "Because I've known you for so long, Judge." The judge himself replied: "Yeah, but you don't have to annoy me. You know I'm not going to read anything out of the book." As counsel attempted to press the argument further, the court instructed: "Just sit down. Just sit down." Trial Tr., Vol. II, at 3-5.

- Finally, during closing argument, the court prevented counsel from referencing problems with eyewitness identification in other cases, as set forth in part F, *supra*. *See also*, Trial Tr., Vol. II, at 14-16.

2.  *Bias*

a. *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29; Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id.* (internal quotation omitted). The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id.* (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration–even a

stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id.* at 556. Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino*, 210 F.3d at 645; *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

### b. Analysis

The Michigan Court of Appeals rejected petitioner's claim, reasoning that "the judge properly prevented defense counsel from arguing with witnesses, distorting their testimony, and reiterating questions that had already been asked and answered," and that these actions did not show bias. *Willis*, 2004 WL 136407, at *9, slip op. at 10. The Court should conclude that this determination was reasonable.

First, in assessing a judicial bias claim, a court must "differentiate between expressions of impatience, annoyance or ire, on the one hand, and bias or partiality on the other hand." *Logue v. Dore*, 103 F.3d 1040, 1045 (1st Cir. 1997). Here, Judge Ford's comments to counsel "show little more than the judge's efforts to expedite the trial[] and maintain courtroom decorum." *Id.* Regardless of whether the judge's efforts were appropriate, they do not demonstrate bias against petitioner himself. As the Supreme Court has explained, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel . . . ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.

Second, the judge's comments did not in any respect disparage either petitioner or his defense. Rather, they were directed solely at counsel. Generally, to support relief, "[p]ersonal bias or a prejudicial attitude must be against the party, not against the attorney for the party." *United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir. 1985); *see also*, *United States v. Harmon*, 21 F. Supp.

2d 642, 645 (N.D. Tex. 1998), *aff'd*, 202 F.3d 265 (5th Cir. 1999). Here, the trial judge did not disparage petitioner, suggest that his defense was incredible, or otherwise intimate any view on the merits of the case. Nor does the record reflect any personal animus toward petitioner himself or any bias on the part of the judge in favor of the prosecution. The judge's comments, regardless of their propriety, do not of themselves give rise to an appearance of partiality and do not establish that he was actually biased against petitioner, and it cannot be said that the Michigan Court of Appeals's determination to the contrary was an unreasonable application of clearly established law. *See Jones v. Luebbers*, 359 F.3d 1005, 1014-15 (8th Cir. 2004); *Allen v. Hawley*, 74 Fed. Appx. 457, 460-61 (6th Cir. 2003); *Copeland v. Walker*, 258 F. Supp. 2d 105, 136-37 (E.D.N.Y. 2003). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.     *Judicial Comments/Fair Trial*

a. *Clearly Established Law*

Unlike an appellate court on direct appeal, a federal habeas court does not exercise supervisory powers over the state courts, *see Murphy v. Florida*, 421 U.S. 794, 797 (1975), and thus a federal court's habeas jurisdiction is limited to correcting violations of federal constitutional law; it does not have the authority to correct perceived injustices absent a constitutional violation. *See Guinan v. United States*, 6 F.3d 468, 470-71 (7th Cir. 1993); 28 U.S.C. § 2254(a) (emphasis added) (federal court has jurisdiction to entertain petition brought by state prisoner "*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").[2]

---

[2]In contrast, a federal court may use its supervisory powers over lower federal courts and federal prosecutors to correct injustices. *See United States v. Leslie*, 783 F.2d 541, 569-70 (5th Cir. 1986) (en banc) (Williams, J., dissenting), *vacated*, 479 U.S. 1074 (1987); *United States v. Crawford*, 466 F.2d 1155, 1157 (10th Cir. 1972).

As the Sixth Circuit has explained:

Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects for collateral attack on a conviction. In collateral proceedings, the test is whether the errors alleged could have rendered the trial fundamentally unfair. To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree.

*McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985) (internal quotations, citations, and alterations omitted). Or as the Ninth Circuit has explained, on habeas review "the question is not simply whether the trial judge committed misconduct or whether [a federal appellate court] would reverse a conviction obtained after a trial in which a federal judge behaved in the same manner. Rather, we must ask whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *accord Harrington v. Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997). In other words, to warrant habeas relief "there must be an 'extremely high level of interference' by the trial judge which creates 'a pervasive climate of partiality and unfairness.'" *Duckett*, 67 F.3d at 740 (quoting *United States v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir. 1982)).

### b. Analysis

Here, as noted above, the trial judge's comments were not directed at the merits of the case or at petitioner himself. Even if somewhat colorful, the court's comments were generally in response to counsel's failure to heed the court's rulings and were directed solely at counsel. In short, the trial judge's comments "were generally in response to defense counsel's combative style and his failure to accept the court's direction," the comments were not "substantially adverse to the defendant himself," and "[t]here is no showing that the trial judge ever intimated [her] opinion on the merits of the case." *Todd v. Stegal*, 40 Fed. Appx. 25, 27 (6th Cir. 2002). In these

circumstances, coupled with the overwhelming evidence of guilt, petitioner cannot show that the trial judge's comments denied him a fair trial. *See id.* at 27-28; *United States v. Samak*, 7 F.3d 1196, 1198 (5th Cir. 1993).

J.    *Limitation on Cross-Examination (Claim X)*

Petitioner next contends that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court curtailed his cross-examination of Rodney Harrison. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the 14th Amendment's Due Process Clause. *Pointer v. Texas*, 480 U.S. 400, 406 (1965). The Supreme Court's "Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam). Petitioner's habeas claim raises the latter type of challenge. The latter category of Confrontation Clauses cases recognizes that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Thus, in cases where the trial court has restricted cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)). However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-

examination that is effective in whatever way and to whatever extent the defense might wish."
*Fensterer*, 474 U.S. at 20. The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." *California v. Green*, 399 U.S. 149, 166 (1970). Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986).

2.      *Analysis*

Petitioner's claim is based on the trial judge's interruptions of counsel's cross-examination of Harrison, as detailed in the preceding section addressing petitioner's judicial bias claim. However, as noted, in each instance the trial judge was sustaining a proper evidentiary objection to the questions of counsel. More importantly, despite the trial judge's rulings, counsel was able to significantly impeach Harrison's credibility throughout cross-examination by showing that Harrison's testimony contradicted his earlier statements and the testimony of other witnesses. Thus, even if counsel was not able to impeach Harrison on every single issue which he desired in the precise manner that counsel wished to do so, petitioner was not "significantly limited in any way in the scope or nature of his cross-examination." *Green*, 399 U.S. at 166. Finally, in light of the significant impeachment of Harrison that counsel was able to accomplish and the other evidence against petitioner, including the videotape, it is doubtful that the few additional instances of

impeachment which counsel sought to accomplish would have had any impact on the jury's assessment of Harrison's credibility, and petitioner therefore cannot show that he was prejudiced by the restriction on his cross-examination. *See DiBenedetto v. Hall*, 272 F.3d 1, 11 (1st Cir. 2001); *United States v. Cordova*, 157 F.3d 587, 595 (8th Cir. 1998). Any error was thus harmless, and petitioner is not entitled to habeas relief on this claim. *See generally*, *Van Arsdall*, 475 U.S. at 684 (claim of denial of confrontation based on limitation of cross-examination subject to harmless error analysis).

K.    *Prosecutorial Misconduct Claims (Claims XIII & XIV)*

Petitioner next raises two prosecutorial misconduct claims. First, petitioner contends that the prosecutor failed to list all known *res gestae* witnesses as required by MICH. COMP. LAWS § 767.40a (Claim XIII). Second, petitioner contends that the prosecutor knowingly presented perjured testimony (Claim XIV). The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Failure to List Res Gestae Witnesses (Claim XIII)*

Petitioner first contends that the prosecutor denied him a fair trial by failing to list all known *res gestae* witnesses, as required by MICH. COMP. LAWS § 767.40a(1). Specifically, petitioner contends that the prosecutor should have been required to list every employee and customer in the store at the time of the robbery. The Michigan Court of Appeals rejected this claim. Explaining that "[a] res gestae witness is a person who witnesses some event in the continuum of a criminal transaction," the court reasoned that "there was nothing in the record to indicate that any other person who may have been in the store witnessed an 'event in the continuum' of the robbery. Harrison testified that no one else saw the robbery, and that the robber did not speak loudly enough

for anyone else to hear him." *Willis*, 2004 WL 136407, at *10, slip op. at 11. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner's claim is based solely on the prosecutor's alleged failure to comply with the Michigan res gestae statute. However, it is well established that errors of state law do not provide a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, petitioner's claim that the prosecutor violated state law regarding the production of res gestae witnesses is not cognizable on habeas review. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001) (Tarnow, J.).[3]

2.    *Presentation of Perjured Testimony (Claim XIV)*

Petitioner also contends that he was denied a fair trial by the presentation of perjured testimony. Specifically, petitioner points to Harrison's trial testimony that the robbery took place out of the view of the camera. Harrison testified that "[t]he way the camera is positioned, no, you cannot see Mr. Willis with the nine-millimeter, nor can you see me giving me [sic] Mr. Willis money in the plastic bag." Trial Tr., Vol. I, at 74. At the preliminary examination, Harrison similarly testified that, on the videotape, "you could not see the weapon because he had the weapon down in between both cash registers where you could not see the weapon." Prelim. Exam. Tr., at 14-15. Harrison added, however, that "you could see there was something in his hand." *Id*. at 15.

---

[3]Although there is no published decision directly on point, in a number of unpublished decisions the Sixth Circuit has reached this conclusion. *See, e.g.*, *Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at *1 (6th Cir. Nov. 8, 1999) (per curiam); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. July 19, 1995) (per curiam); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec. 4, 1989) (per curiam); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam).

Petitioner contends that Harrison's trial testimony–that the entire crime occurred out of the view of the camera–was false, as demonstrated by Harrison's preliminary examination testimony in which Harrison claimed that, although the gun was not visible, a viewer could see "something" in petitioner's hand. The Michigan Court of Appeals rejected this claim, reasoning:

> Review of the record reveals that, at the preliminary examination, Harrison stated that the surveillance video showed that something was in the robber's hand. At trial, however, he neither repeated nor contradicted this assertion. The effect of the omission is that Harrison's trial testimony left out one detail that had a slightly inculpatory effect. Inconsistencies between a witness' trial testimony and prior statements can serve as a basis for impeachment, but they do not establish prosecutorial misconduct based on the knowing introduction of false testimony.

*Willis*, 2004 WL 136407, at *11, slip op. at 12. The Court should conclude that this determination was reasonable, and therefore that petitioner is not entitled to habeas relief on this claim.

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id*. at 269. It is equally well established, however, that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th

Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). Thus, to succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

Here, petitioner offers nothing to show that Harrison's testimony at trial amounted to perjury. Harrison testified at trial that the robbery occurred off-camera, and there is no evidence that this testimony is false. On the contrary, at the trial level all parties agreed that the videotape did not show the robbery. It is true that Harrison testified at the preliminary examination that "[y]ou could see something in his hand," Prelim. Exam. Tr., at 14-15. This testimony, however, is not necessarily irreconcilable with Harrison's trial testimony. Despite this testimony, Harrison also testified at the preliminary examination that, because of the height of the cash registers, neither petitioner's gun nor the bag in which Harrison handed petitioner the money were visible on the videotape. *See id.* at 14.

Viewed in context, it is an equally plausible interpretation of Harrison's testimony that "you" refers to something he could see as the robbery was happening, even though it was not evidence on the videotape.[4] Further, even if there is a conflict, petitioner has offered nothing to show that Harrison's trial testimony was false, rather than his preliminary examination testimony. Indeed, in light of the view of all the parties that the videotape did not show the robbery, it is more likely that if either version was incorrect, it was the version Harrison testified to at the preliminary examination. In short, petitioner has offered nothing to establish that Harrison's trial testimony was "indisputably false." *Byrd*, 209 F.3d at 517-18. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

L.    *Counsel Claims (Claims VI, VII.C, XI, XII & XV)*

Finally, petitioner raises a number of claims relating to the assistance he received from counsel. Petitioner contends that the trial court erred in denying his request for new counsel or, alternatively, for a continuance because counsel had not sufficiently met with him and was unprepared for trial (Claim XI). Relatedly, petitioner contends that based on counsel's lack of pre-trial meeting and preparation, he is entitled to a presumption of prejudice (Claim XII). Petitioner also asserts that trial counsel made a number of errors at trial which amount to ineffective assistance (Claim XV). Finally, petitioner argues that his appellate attorney was ineffective in a number of

---

[4]Petitioner suggests that Harrison testified at the preliminary examination that the entire robbery occurred in full view of the camera. This suggestion is a gross misreading of Harrison's preliminary examination testimony. Harrison testified at the preliminary examination that, in fact, the video did not show petitioner's gun or the exchange of money. Even if Harrison's statement that "you could see something in his hand" referred to what the videotape showed rather than what he personally witnessed, this single statement is far from an assertion that the video shows the entire robbery, particularly in light of Harrison's testimony that the cash registers made it impossible to see the gun or the exchange of money.

respects (Claims VI & VII.C). The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." *Id.* at 695.

2. *Applicability of Presumed Prejudice Standard (Claim XII)*

In his twelfth habeas claim, petitioner contends that counsel failed to meet with him in the month preceding the trial, except for one fifteen-minute meeting the Friday before trial started. Petitioner contends that this amounted to a denial of counsel in the pretrial period, and that he is entitled to the presumed prejudice standard of *United States v. Cronic*, 466 U.S. 648 (1984), pursuant to which he need not establish prejudice on his ineffective assistance of counsel claims under the second prong of the *Strickland* test. The Michigan Court of Appeals rejected this claim, reasoning that "limited preparation time alone does not permit . . . an inference [of prejudice], absent actual proof of prejudice." *Willis*, 2004 WL 136407, at *10, slip op. at 11. The Court should agree that *Cronic* is inapplicable here.

Petitioner has pointed to no clearly established Supreme Court precedent requiring application of the presumed prejudice standard in the circumstances present here. The Supreme Court has limited the presumed prejudice standard to three types of ineffective assistance claims: (1) complete denial of counsel; (2) government interference with the right to counsel; and (3) conflicts of interest. *See Smith v. Robbins*, 528 U.S. 259, 287 (2000) (citing *Strickland*, 466 U.S. at 692; *Cronic*, 466 U.S. at 659 & n.25). The Supreme Court has stated that the first category–complete denial of counsel–encompasses both actual and constructive denials of counsel, and that a constructive denial of counsel can occur where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Petitioner argues that counsel's failure to meet with him in the month prior to trial constitutes a constructive denial of counsel under the first category.

The Supreme Court has recently explained, however, that for an ineffective assistance claim to come within this limited exception to *Strickland*, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). The distinction is between "bad lawyering" and "no lawyering," *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990); *see also*, *Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002), and the difference is not one of degree, but one of kind, *see Bell*, 535 U.S. at 697. Here, petitioner has not demonstrated that counsel completely failed to subject to the prosecution's case to meaningful adversarial testing. Counsel met with petitioner briefly prior to trial, and petitioner claims only that counsel failed to meet with him more in the month prior to trial, not that counsel failed to meet with him and discuss the case at all. Further, counsel apparently conducted some investigation, argued various matters on petitioner's behalf, and extensively cross-examined the prosecution's witnesses. *See Moss*, 286 F.3d at 859; *Martin v. Mitchell*, 280 F.3d 594, 613 (6th Cir. 2002); *Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998). All of petitioner's claims are run-of-the-mill pretrial and trial error claims subject to the *Strickland* framework. *See, e.g.*, *Patrasso v. Nelson*, 121 F.3d 297, 300 (7th Cir. 1997); *Gregory v. United States*, 109 F. Supp. 2d 441, 450 (E.D. Va. 2000). In short, "[t]he aspects of counsel's performance challenged by [petitioner] . . . are plainly of the same ilk as other specific attorney errors [the Supreme Court] ha[s] held subject to *Strickland*'s performance and prejudice components." *Bell*, 535 U.S. at 697-98.

*Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), upon which petitioner relies, does not compel a contrary conclusion. In *Mitchell*, the Sixth Circuit concluded that *Cronic* required a presumption of prejudice be applied to the petitioner's ineffective assistance claims. The court's conclusion was based on the fact that during the entire course of counsel's seven month representation, he had met with petitioner for only six minutes immediately prior to trial, and on the

fact that in the month prior to trial counsel had been suspended from the practice of law, and thus did not appear at motion hearings or do any other work on the case. *See id.* at 742-44. Contrary to petitioner's argument, *Mitchell* is not controlling here. Unlike in *Mitchell*, petitioner's counsel was not suspended from the practice of law in the month leading up to the trial. And, unlike in *Mitchell*, petitioner does not allege that counsel failed to meet with him at all; rather, petitioner only claims that counsel failed to meet with him (other than the 15 minute meeting) in the month leading up to trial. The *Mitchell* court itself distinguished that case from the circumstances present here, noting that if the issue had been only the failure to meet and prepare in the thirty-day period prior to trial, "it might have been proper to apply the *Strickland* analysis, for as *Bell* notes, counsel's failure in particular instances is evaluated under *Strickland*." *Mitchell*, 325 F.3d at 742. The *Mitchell* court also distinguished the Sixth Circuit's prior decision in *Dick v. Scroggy*, 882 F.2d 192 (6th Cir. 1989). *See Mitchell*, 352 F.3d at 744. In *Dick*, the court applied *Strickland* to a claim based on counsel's failure to consult with the petitioner at all except for a 30-45 minute meeting the day before trial. *See Dick*, 882 F.2d at 197. Petitioner's case here is more akin to *Dick* than the egregious circumstances involved in *Mitchell*.

In short, *Mitchell* is a case involving unique facts–a complete failure to consult combined with counsel's suspension from the practice of law immediately prior to trial–and its holding is cabined by those unique facts. *See Johnson v. Bradshaw*, 205 Fed. Appx. 426, 432-33 (6th Cir. 2007). *Mitchell* does not cast doubt on the general rule that claims of ineffective assistance of counsel based on counsel's failure to consult with the petitioner or to adequately prepare are governed by the *Strickland* test. *See, e.g.*, *United States v. Rogers*, 13 Fed. Appx. 386, 388-89 (7th Cir. 2001) (no presumption of prejudice with respect to claim based on counsel's repeated tardiness,

lack of preparation, and failure to meet with petitioner, where no proceedings took place without counsel present, counsel actively participated in the proceedings, and counsel subjected the prosecutor's case to adversarial testing); *cf. Chambers v. Maroney*, 399 U.S. 42, 53-54 (1970) (no prejudice found although counsel first appeared only a few minutes prior to trial). Accordingly, the Court should conclude that the Michigan Court of Appeals's decision was not contrary to, or an unreasonable application of, *Cronic* and *Strickland*, and that the two prong test of *Strickland* applies to petitioner's ineffective assistance claims.

3.    *Denial of Continuance or Substitute Counsel (Claim XI)*

Petitioner contends that he was denied a fair trial and the effective assistance of counsel by the trial court's failure to grant a continuance or appoint substitute counsel. On the first day of trial, prior to jury selection, petitioner informed the court that he wanted to fire his appointed counsel, Gerald Surowiec, because he had not seen his counsel for a month, with the exception of counsel's fifteen minute visit on the previous Friday. Based on that visit, petitioner was convinced that counsel was not prepared for trial. *See* Trial Tr., Vol. I, at 3-4. The court then questioned counsel regarding his preparation for the trial:

| | |
|---|---|
| THE COURT: | Okay. Mr. Surowiec, are you prepared for trial? |
| MR. SUROWIEC: | Yes, I am, your Honor. |
| THE COURT: | Go [sic] you know what the issues are in this matter? |
| MR. SUROWIEC: | Yes, I do, your Honor. |
| THE COURT: | All right. And we've had a couple of motions in this matter, which the Court denied; is that correct? |
| MR. SUROWIEC: | That's true, Judge. |
| THE COURT: | Is there anything about this case that you don't know about? |
| MR. SUROWIEC: | Very little, Judge. |
| THE COURT: | All right. Well, we'll deny the motion.<br>        Now, Mr. Surowiec has been here; he knows the case. And there was no request prior to today. So, we'll deny the motion. |

*Id*. at 4.  Petitioner contends that the trial court's inquiry with respect to his problems with counsel was insufficient and that he should have been appointed substitute counsel.  Alternatively, petitioner contends that he should have been granted a continuance to give counsel further time to prepare.  The Michigan Court of Appeals rejected this claim, reasoning:

> [D]efendant failed to establish a legitimate reason for seeking substitute counsel or prejudice resulting from the trial judge's decision.  Despite defendant's belief that trial counsel was unprepared, the record shows that counsel had reviewed the surveillance videotape with Hunter, reviewed Harrison's statement to the police, and was prepared to cross-examine witnesses and elicit weaknesses in the prosecution's case.  His conduct at trial discloses that he was prepared to present a reasonable defense under the circumstances, and defendant has not demonstrated any way in which he was prejudiced by an alleged lack of preparation.

*Willis*, 2004 WL 136407, at *10, slip op. at 10.  The Court should conclude that this determination was reasonable, and that petitioner is therefore not entitled to habeas relief on this claim.

### a.  Clearly Established Law

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  This right contemplates a corollary right to the counsel of one's choice, and thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'"  *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  This right, however, is not absolute, and "is circumscribed in several important respects."  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Importantly, the right to counsel of one's choice "must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court."  *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *see also*, *Lockett v. Arn*, 740 F.2d

407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of that right must be balanced against the court's authority to control its docket."). Further, as the Supreme Court has explained, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984).

Because an indigent defendant has no absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). In determining whether the trial court erred in failing to appoint substitute counsel, a federal habeas court should consider: (1) the timeliness of the defendant's motion; (2) the adequacy of the trial court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense. *See United States v. Allen*, 789 F.2d 90, 92 (1st Cir. 1986) (adopted by the Sixth Circuit for use in habeas cases in *Tolliver v. Dallman*, No. 94-3491, 1995 WL 364176, at *2 (6th Cir. June 16, 1995)); *see also*, *United States v. Williams*, 176 F.3d 301,

314 (6th Cir. 1999).

### b. Failure to Appoint Substitute Counsel

Petitioner contends that the trial court's inquiry into his dissatisfaction with counsel was inadequate, and that the court should have questioned him and counsel further regarding their disagreement about the case and counsel's preparedness. Petitioner also contends that he was entitled to the appointment of substitute counsel. The Court should conclude that these claims are without merit.

Here, petitioner failed to establish good cause for substitution of counsel, "such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith*, 923 F.2d at 1320. Petitioner does not allege that there was any irreconcilable conflict between he and counsel, or that counsel was acting with a conflict of interest. While petitioner does contend that there was a breakdown in communication, he does not allege the type of complete breakdown for which substitute counsel is warranted. Rather, petitioner contends only that counsel was unprepared and had spoken with him only once for 15 minutes in the month before trial. This is insufficient to constitute the type of complete breakdown justifying appointment of substitute counsel. *See United States v. Carillo*, 161 Fed. Appx. 790, 793 (10th Cir. 2006).

Further, even assuming that the trial court erred by not appointing substitute counsel, petitioner's claim fails because any error was harmless. As noted above, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably by represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, the courts that have considered the issue have concluded that "[u]nless [a defendant] can establish an ineffective assistance claim under *Strickland v. Washington* . . . any error

in the [trial] court's disposition of [the defendant's] motion for appointment of substitute counsel is harmless." *United States v. Graham*, 91 F.3d 213, 217 (D.C. Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also*, *United States v. Calderon*, 127 F.2d 1314, 1343 (11th Cir. 1997); *United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992); *Bowie v. Renico*, No. 00-10013, 2002 WL 31749162, at *11 (E.D. Mich. Nov. 6, 2002) (Lawson, J.); *Stephens v. Costello*, 55 F. Supp. 2d 163, 172 (W.D.N.Y. 1999).

The Sixth Circuit has issued conflicting decisions on whether harmless error review is appropriate where a trial court inappropriately fails to appoint substitute counsel. *Compare Krist v. Foltz*, 804 F.2d 944, (6th Cir. 1986) (performing harmless error review), *with Wilson v. Mintzes*, 781 F.2d 275, (6th Cir. 1985) (harmless error inappropriate). Recognizing this intracircuit conflict, the *Tolliver* court determined that harmless error review is appropriate. The court explained:

> The Supreme Court has not directly ruled on the specific issue of whether a finding that a trial court erred in denying a request for new counsel is subject to a harmless error or prejudice analysis, or whether it would require *per se* reversal as found by the district court here. The Supreme Court, however, has increasingly moved in recent years toward expanding those cases under which a harmless error analysis applies to collateral appeals. *See, e.g.*, *O'Ne[a]l v. McAninch*, 115 S. Ct. 992 (1995); *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1722 (1993). The earlier panels confronting this issue did not have the benefit of *Brecht* or *O'Ne[a]l* to guide their analysis. In light of recent Supreme Court rulings it seems appropriate to extend the harmless error analysis to counsel of choice cases.

*Tolliver*, 1995 WL 364176, at *3.[5] Although *Tolliver* is not binding on this Court because it is an unpublished opinion, *see* 6TH CIR. R. 28(g), 206(c), it is persuasive as it is the only Sixth Circuit case to directly address the issue in light of the Supreme Court's decisions in *Brecht* and *O'Neal*, *see* 6TH CIR. R. 28(g) (although reliance on unpublished opinions is generally disfavored, such

---

[5]Because petitioner is proceeding *pro se*, a copy of the Sixth Circuit's unpublished decision in *Tolliver* is attached at the end of this Report.

opinions may be relied on where they have "precedential value in relation to a material issue in a case and . . . there is no published opinion that would serve as well[.]"); *In re Braddy*, 195 B.R. 365, 370 (Bankr. E.D. Mich. 1996), and because it is in accord with the decisions of other courts on the matter. *See also*, *United States v. Wilhite*, 108 Fed. Appx. 367, 370 (6th Cir. 2004) (applying harmless error analysis to claim that court erred in failing to appoint substitute counsel).

Thus, even if petitioner had established good cause for the appointment of substitute counsel, he is entitled to habeas relief only if counsel rendered constitutionally ineffective assistance at trial. As discussed below, however, petitioner's ineffective assistance of counsel claims are without merit. Thus, even if the trial court erred in denying counsel's motion to withdraw, petitioner was represented by an effective advocate for his case, in accordance with the "essential aim" of the Sixth Amendment right to counsel. *See Wheat*, 486 U.S. at 159.

With respect to petitioner's claim that the trial court failed to adequately inquire into his dissatisfaction with counsel, the Court should conclude that the claim is without merit. Here, petitioner had the opportunity to address the court and discuss his dissatisfaction with counsel. After expressing his belief that counsel was unprepared, the trial court inquired with counsel about his preparedness. This satisfied the court's obligation to inquire into the matter. *See United States v. Johnson*, 961 F.2d 1488, 1491 (10th Cir. 1992). Further, as with the court's failure to appoint substitute counsel, the court's alleged failure to inquire is subject to harmless error review. *See Stephens*, 55 F. Supp. 2d at 171. Because counsel did not render constitutionally inadequate assistance at trial, petitioner cannot show he was prejudiced by the court's failure more fully to inquire of petitioner the basis for his request for new counsel. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. *Failure to Grant Continuance*

Petitioner also contends that he was denied a fair trial by the trial court's failure to grant a continuance to allow counsel further time to prepare. "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Unger v. Sarafite*, 376 U.S. 575, 589 (1964). At the same time, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Id.* In short, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Unger*, 376 U.S. at 589). Here, petitioner cannot show that the trial court's failure to grant a continuance was an abuse of discretion. The court questioned petitioner's counsel, who indicated that he was fully prepared to try the case. The trial court was entitled to rely on counsel's assurance that he was ready to proceed in denying petitioner's request for a continuance. *See Morris*, 461 U.S. at 12 ("In the face of the unequivocal and uncontradicted statement by a responsible officer of the court that he was fully prepared and 'ready' for trial, it was far from an abuse of discretion to deny a continuance."); *see also*, *United States v. Hussein*, 151 Fed. Appx. 257, 259 (4th Cir. 2005); *United States v. Roca-Alvarez*, 451 F.2d 843, 847 (5th Cir. 1971).

Further, to be entitled to habeas relief, petitioner must show actual prejudice to his defense resulting from the trial court's failure to grant a continuance. *See United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997); *Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997). As noted above, petitioner cannot establish prejudice because he cannot show that counsel's performance was

constitutionally inadequate. For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    4.    *Trial Counsel (Claim XV)*

Petitioner contends that his trial counsel was ineffective for failing to: (1) offer to waive trial on the felon in possession charge; (2) object to the absence of the *res gestae* witnesses; (3) object to the trial judge's conduct; (4) object to the perjured testimony of Rodney Harrison; and (5) secure equipment to view the videotape.

### a. Waiver of Trial on Felon in Possession Charge

Petitioner first contends that trial counsel was ineffective for failing to offer to waive trial on the felon in possession charge. The Michigan Court of Appeals rejected this claim, reasoning that "counsel reasonably could have believed defendant had a fair chance of acquittal of both robbery and felon in possession, especially where the primary defense at trial was misidentification." *Willis*, 2004 WL 136407, at *10, slip op. at 11. The Court should conclude that this determination was reasonable.

As the court of appeals noted, petitioner's defense at trial was that he did not commit the robbery, and that Harrison had either lied about the robbery occurring at all, or had misidentified petitioner. In light of this defense, based on petitioner's own statements to counsel, it was not unreasonable for counsel to not concede guilt on the felon in possession charge. Contrary to petitioner's argument, the court of appeals's conclusion was not mere speculation. Rather, it was an acknowledgment of the rule that counsel's performance is presumed to have been reasonable, and that petitioner had failed to offer anything to overcome this presumption. *See Strickland*, 466 U.S. at 689.

Further, petitioner has not established prejudice. The prosecution did not present any evidence regarding the circumstances or nature of petitioner's prior felony conviction. Rather, the parties stipulated merely that petitioner had a prior felony conviction. *See* Trial Tr., Vol. II, at 5, 13-14. In light of the evidence presented at trial and the fact that there was no discussion of the circumstances of the prior felony, the absence of the brief mention that the parties had stipulated to the fact that petitioner had a prior felony would not have created a reasonable probability that, but for counsel's failure to concede guilt on this charge, the result of the trial would have been different. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Res Gestae Witnesses, Trial Judge's Conduct, and Harrison's Testimony

Petitioner next contends that counsel was ineffective for failing to object to the prosecutor's failure to list all *res gestae* witnesses, the trial judge's conduct, and Harrison's perjured testimony. Each of these claims is without merit.

With respect to the *res gestae* witnesses, the court of appeals found that there was no violation of state law because there was no evidence that any additional *res gestae* witnesses existed. This determination of state law is binding on this Court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, any objection would have been meritless, and counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).

With respect to the trial judge's conduct, petitioner cannot show that he was prejudiced by

counsel's failure to object. As noted above, petitioner is unable to show that he was denied a fair trial by the trial judge's conduct. Because he cannot establish that he was denied a fair trial, petitioner likewise cannot show that he was prejudiced by counsel's failure to object. *Cf. White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial).

Finally, petitioner cannot show that counsel was ineffective for failing to object to Harrison's trial testimony. As noted above, there is no evidence that Harrison's trial testimony was perjured, and it is even questionable whether Harrison's trial testimony contradicted his preliminary examination testimony. Nonetheless, counsel cross-examined Harrison extensively on the discrepancies between his various statements and testimony, as well as on his identification of petitioner. In these circumstances, petitioner can show neither the counsel was deficient nor that he was prejudiced by counsel's failure to object to Harrison's supposed perjury. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance claims.

### c. Video Equipment

Petitioner also claims that trial counsel was ineffective for failing to secure equipment with which the jury could view the entire surveillance videotape. As noted above in connection with petitioner's evidentiary claim relating to the videotape, all of the parties agreed that the video did not show the robbery itself, and this fact was clearly put forth to the jury. Further, counsel viewed the videotape and concluded that the tape possessed no exculpatory value, and petitioner does not

suggest any specific exculpatory evidence that the videotape would have revealed. In these circumstances, petitioner cannot show that he was prejudiced by counsel's failure to show the entire tape to the jury. In addition, as the court of appeals reasonably concluded, counsel "reasonably could have believed that playing the surveillance videotape might have hurt the defense by defeating his suggestion that the still photographs misrepresented the tape," *Willis*, 2004 WL 136407, at *10, slip op. at 11, and petitioner has offered nothing to overcome the presumption that this was a reasonable trial strategy. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 5. *Appellate Counsel (Claims VI & VII.C)*

Finally, petitioner contends that appellate counsel was ineffective for failing to: (1) secure duplicates of the photographic exhibits and videotape for appeal; (2) obtain a copy of the *Wade* hearing transcript for appeal; and (3) include his ineffective assistance of trial counsel claims on direct appeal.

Taking the last claim first, it is clear that petitioner cannot establish that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's ineffective assistance of trial counsel claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal. Further, although the claims were not raised by counsel, they were raised by petitioner in his *pro se* brief and addressed by the Michigan Court of Appeals. Thus, petitioner cannot establish prejudice arising from appellate counsel's failure to

raise these claims on direct appeal.

With respect to the videotape and photographic exhibits, as noted above petitioner has failed to even suggest any exculpatory evidence that the videotape would have revealed, and petitioner has identified no potential appellate claims that could have been developed had his appellate counsel had copies of the videotape and photographs. As noted by the Michigan Court of Appeals, it is unclear whether a *Wade* hearing on the suggestiveness of the identification procedures was actually held, or whether petitioner's motion in the trial court was denied on the pleadings. *See Willis*, 2004 WL 136407, at *6, slip op. at 7. The court of appeals further held, however, that the law governing photographic identification procedures "precludes any possibility of relief for defendant based on the allegedly erroneous admission of identification evidence." *Id*. at *7, slip op. at 8. The court noted that "[a]lthough defendant's trial counsel vigorously cross-examined Hunter about the photographic array, he failed to elicit any support for his claim of undue suggestiveness. On the contrary, Hunter stated that he did not use defendant's Secretary of State photograph as part of the array because his smile would have distinguished him from other subjects." *Id*. The court of appeals further noted that the photo array was introduced into evidence, and that physical differences in the subjects of the array alone "would not have led to the exclusion of the identification evidence, because physical differences pertain to the evidence's weight, not its admissibility." *Id*. Finally, the court of appeals explained that "Harrison's unequivocal testimony that he recognized defendant based on their encounter during the robbery, and not from his photograph, would allow his identification testimony to be admitted even if the photographic array could be considered suggestive." *Id*. The court of appeals concluded, therefore, that nothing in the *Wade* hearing transcript, if it existed, could serve as a basis for appellate relief, and thus petitioner was not

prejudiced by counsel's failure to obtain a copy of the hearing transcript. *See id.* at *8, slip op. at 8. The Court should conclude that this determination is reasonable.

First, as the court of appeals noted, there was simply no evidence that the photographic array was unduly suggestive. Hunter stated that he did not include one photograph of petitioner because it would have been suggestive, and counsel was unable to elicit any evidence of suggestiveness despite his vigorous cross-examination. To establish that the photo array was impermissibly suggestive, petitioner must show that "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001). Thus, a line-up is impermissibly suggestive where it "emphasizes the focus on a single individual thereby increasing the likelihood of misidentification." *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (internal quotation omitted); *see also*, *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994); *Griffin v. Rose*, 546 F. Supp. 932, 936 (E.D. Tenn. 1981), *aff'd*, 703 F.2d 561 (6th Cir. 1982). In short, an identification procedure is suggestively only if it "directs undue attention to a particular" person. *State v. Ramires*, 37 P.3d 343, 350 (Wash. Ct. App. 2002). Thus, a photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions given by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (internal quotation omitted).

Mere differences in appearance alone–which is all that petitioner suggests–do not render a line-up impermissibly suggestive. *See Hensley v. Carey*, 818 F.2d 646, 650 (7th Cir. 1987) (internal quotation omitted) ("The police are not required to conduct a search for identical twins in age, height, weight or facial features."). Further, as the court of appeals correctly observed, a subsequent

in-court identification is permissible if it is based upon observations independent of the illegal line-up. *See United States v. Wade*, 388 U.S. 218, 241 (1967). Because there is nothing which suggests that a copy of the *Wade* hearing transcript could have provided any arguable appellate claim, petitioner cannot show that his appellate attorney was ineffective for failing to secure the transcript. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

M.     *Evidentiary Hearing*

In his habeas application, petitioner requests an evidentiary hearing with respect to a number of his claims. Specifically, petitioner contends that he is entitled to an evidentiary hearing with respect to claims V (identification expert), VI (ineffective assistance of appellate counsel), VII (failure to provide transcript, exhibits, and videotape), VIII (admission of irrelevant videotape), XI (denial of substitute attorney), XII (ineffective assistance of counsel), XIII (failure to endorse *res gestae* witnesses), XIV (perjured testimony), and XV (ineffective assistance of counsel). The Court should deny petitioner's request for an evidentiary hearing.

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Here, regardless of whether a hearing is permitted under § 2254(e)(2), the Court should conclude that an evidentiary hearing is not necessary to resolve petitioner's claims. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d

331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963).  As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) (citations and footnote omitted).

Here, an evidentiary hearing does not have the potential to advance any of petitioner's claims.  With respect to the identification expert claim, as discussed above there is no clearly established Supreme Court law recognizing a constitutional right to a court appointed identification expert, and thus no facts developed at an evidentiary hearing could entitle petitioner to habeas relief.  Similarly, the prosecutor's failure to endorse all *res gestae* witnesses does not raise a cognizable constitutional claim, and thus petitioner's habeas claim fails as a matter of law even if there were *res gestae* witnesses who were not endorsed.  Petitioner's perjured testimony claim is based solely on the discrepancy between Harrison's preliminary examination and trial testimony, and thus does not require any development of evidence beyond the state court record.  Likewise, petitioner's substitute attorney claim is fully resolvable on the record, and no additional information regarding counsel's actual preparation can alter the reasonableness of the state court's denial of substitute counsel in light of counsel's on-the-record assertion that he was prepared for trial.  With respect to the claims implicating the videotape, because all parties conceded that the tape did not show the

robbery, further development of these claims would be irrelevant to the legal issues presented.

Finally, petitioner's ineffective assistance of counsel claims could, at least in some respects, be advanced by an evidentiary hearing. For example, with respect to some of the claims an evidentiary hearing could provide some evidence to rebut the presumption that counsel's strategic and tactical decisions were reasonable. However, most of the ineffective assistance claims fail on the prejudice prong of the *Strickland* test, and those prejudice issues are apparent from the record as it currently stands. Further, although petitioner claims he is entitled to an evidentiary hearing to develop these claims, he does not suggest any particular evidence that an evidentiary hearing would uncover that would support his claims. The habeas rules "do[] not . . . authorize fishing expeditions. A habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir. 1996); *see also*, *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006). For these reasons, the Court should conclude that an evidentiary hearing is not necessary to resolve petitioner's claims.

N.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/27/07


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 27, 2007.

s/Eddrey Butts_____
Case Manager